David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SHARON THORSON,<br><br>    Plaintiff,<br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC; OCWEN LOAN SERVICING, LLC, AND TRANSUNION, LLC;<br><br>    Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violation of

1

federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff Sharon Thorson ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Ocwen Loan Servicing LLC ("Ocwen") is a Delaware limited liability company doing business in the State of Nevada.

6. Defendant Ocwen is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Defendant Equifax Information Services LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

8. Defendant TransUnion LLC ("TransUnion") is a Delaware corporation, with its principle place of business in Pennsylvania. TransUnion is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Trans Union is doing business in Nevada.

9. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant.

## FACTUAL ALLEGATIONS

### *General Allegations*

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

11. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally

follows from inaccurate reporting of a consumer's fidelity to his or his financial obligations.

### *Plaintiff's Bankruptcy Filing*

12. On or about 12/20/2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 10-33597-led (the "Chapter 13" or "Bankruptcy"). BK ECF No. 1.

13. At the time of filing his Bankruptcy petition, Plaintiff owned real property located at 700 Skipjack Drive, Henderson, NV 89015 (the "Property"). The Property was subject to a first mortgage deed of trust, which was being serviced by one of Ocwen's predecessors in interest, City National Bank ("City National").

14. On October 3, 2011, Plaintiff's first Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order"). BK ECF No. 46. Pursuant to its terms, Plaintiff provided for ongoing payments on his mortgage obligation.[1]

15. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. 11 U.S.C. § 1322(b)(2) ("[T]he plan may . . . modify the rights of holders of secured claims, . . . or of holders of unsecured claims . . . ."); 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor. . . ."); *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) ("[A]

---

[1] On June 5, 2015, the Bankruptcy Court agreed permit Plaintiff to modify her Ocwen loan. *See* BK ECF Nos. 108-2, 111. On March 16, 2015 and again on February 2, 2016, the Court approved a modified plan reflecting the new payment rate and identifying Ocwen as the payee. *See* BK ECF No. 103, 122.

4

plan [of reorganization] is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts.").

16. On 3/9/16, Plaintiff filed his Certificate of Compliance with Conditions Related to Entry of Chapter 13 Discharge. BK ECF No. 129. Therein he represented to the bankruptcy court that he "ha[d] made all payments and completed all obligations required by the plan."

17. Subsequently, on 4/11/16, the bankruptcy court entered its order discharging Plaintiff, finding that among other things, discharge was appropriate because he had fulfilled all requirements under the plan. BK ECF No. 133.

18. To the extent that Plaintiff's creditors (in particular Ocwen) chose to furnish data to a CRA consistent with the terms of the Confirmation Order, such data should have been included in Plaintiff's "consumer file."

19. Pursuant to 15 U.S.C. §1681g(a)(1), "[e]very consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer…[a]ll information in the consumer's file at the time of the request," subject to Plaintiff providing "proper identification" pursuant to 15 U.S.C. §1681h(a)(1).

20. "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. §1681a(g).

21. As discussed below, Defendant CRAs failed to comply with their statutory obligation to provide Plaintiff all information in Plaintiff's consumer file thereby violating the above defined statutory obligations.

22. Additionally, Defendants' conduct described herein also failed to comply with the Consumer Data Industry Association ("CDIA")'s Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

23. The CDIA publishes the Metro 2 reporting standards to assist furnishers and CRAs (like Defendants) with their compliance requirements under the FCRA.

24. A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines."

25. On information and belief, Defendants herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

26. The Metro 2 format guidelines provide specific instruction for properly reporting a secured debt for which a consumer completes the required payments through a chapter 13 bankruptcy, but continues making payments on the account because it is still open following the bankruptcy, i.e. mortgages. *See, e.g.*, 2016 CDIA Credit Reporting Resource Guide ("2016 Metro 2"), Frequently Asked Question 29, at pages 6-26. And that instruction is that the reporting remove any suppression codes associated with bankruptcy reporting "so that ongoing payments made by the consumer can be reported." *Id*.

27. Despite the Metro 2 Format's instructions, Defendants named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed Bankruptcy as further set forth below.

28. In turn, the CRA Defendants rereported inaccurate and incomplete information, respectively, thus violating their respective duties to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when providing a consumer with a disclosure of his consumer file.

29. To this end, the incomplete reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

30. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

31. Additionally, reporting and rereporting patently incorrect and/or misleading statements also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

## THE EQUIFAX VIOLATIONS

*Equifax Reporting Inaccuracies and First Failure to Properly Respond to Plaintiff's Dispute*

32. In an Equifax credit report dated May 25, 2016, Report No. 6646277381 ("First Equifax Report"), Equifax inaccurately reported, *inter alia*, items of information from Homeq Servicing, ("Homeq"), and Allied Collection Service ("Allied"), for which Plaintiff had performed all obligations owed.

7

33. On or about August 1, 2016, and pursuant to 15 U.S.C. 1681i(a)(2), Plaintiff disputed this inaccurate reporting via letter to Equifax ("First Equifax Dispute Letter").

34. Upon information and belief, upon receiving the First Equifax Dispute Letter, Equifax notified each furnisher of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

35. Alternatively, Equifax failed to notify each furnisher pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

36. Equifax was required to conduct an investigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

37. Upon information and belief, Equifax failed to provide Plaintiff with a report of the results of its reinvestigation within 45 days of receiving notice of Plaintiff's dispute, thus violating its duties to do so under 15 U.S.C. § 1681i(a)(6).

38. On or about November 7, 2016, Plaintiff notified Equifax, in writing that it had failed to conduct a complete reinvestigation by failing to notify him of the results of its reinvestigation in response to the August 1, 2016 dispute (the "Equifax Failure-to-Investigate Letter"). Plaintiff once again requested that, pursuant to 15 U.S.C. § 1681i(a)(2), Equifax complete its reinvestigation.

39. On or about December 9, 2016, Plaintiff finally received a "reinvestigation" report from Equifax, Confirmation No. 6327023008 ("Equifax Reinvestigation"). Equifax indicated that it had received and responded to the Equifax Failure-to-Investigate Letter, as it indicated that the Homeq and Allied tradelines had been researched.[2]

---

[2] Plaintiff disputed two Homeq tradelines, with a $55,400 and $221,760. Equifax's reinvestigation continued to report the first Homeq tradeline unchanged and deleted the second.

40. In failing to perform a timely "reinvestigation" in connection with the First Equifax Dispute Letter, Equifax failed to follow reasonable procedures designed to ensure the maximum possible accuracy of information in Plaintiff's consumer report.  15 U.S.C. § 1681e(b).

41. On information and belief, Equifax's conduct in failing to timely respond to Plaintiff's First Equifax Dispute Letter was willful. Plaintiff is, accordingly, eligible for statutory damages.

42. Also as a result of Equifax's conduct in failing to timely respond to the First Equifax Dispute Letter, Plaintiff has suffered actual damages, including without limitation a concrete informational injury in connection with the deprivation of her right to receive a timely reinvestigation from Equifax.  Plaintiff has also suffered actual damages, including but not limited to out-of-pocket expenses in challenging Defendants' wrongful omissions, and emotional distress.

### *Equifax's Suppression of Positive Data Created an Incomplete Report Regarding Ocwen Account No. ****4023*

43. Additionally, on information and belief, the First Equifax Report also indicated that positive data Ocwen should have been reporting was suppressed or missing altogether, thereby depriving Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.  That is, the material omission of Plaintiff's positive payment history on his mortgage was patently incorrect because he was in fact making timely monthly payments on his Ocwen account from May 2016 through March 2017 ("Positive Suppressed Data").

44. This failure caused Plaintiff's Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Ocwen.

45. Accordingly, on or about May 6, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Equifax Report.

46. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Second Equifax Dispute Letter"), requesting the above incomplete and materially misleading omissions be corrected to include the Positive Suppressed Data and correct the inaccurate reporting.

47. Plaintiff also included proof of the Positive Suppressed Data, which was provided directly by Ocwen to Plaintiff on April 17, 2017 in response to Plaintiff's request for information pursuant to 12 C.F.R. §1024.36 (the "RFI Response").

48. Indeed, the RFI Response laid transparent the Positive Suppressed Data for Ocwen, which Equifax failed to include in Plaintiff's Credit File.

49. Upon information and belief, upon receiving the Second Equifax Dispute Letter, Equifax timely notified Ocwen of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

50. Alternatively, Equifax failed to notify Ocwen pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

51. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

52. Equifax was required to conduct an investigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

53. A reasonable investigation by Equifax and Ocwen should have resulted in an update to Ocwen's tradeline to include all of the Positive Suppressed Data.

54. Equifax and Ocwen therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Consumer File.

55. Equifax and Ocwen, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

56. Specifically, in a May 24, 2017 Equifax Reinvestigation, No. 7144010002 ("Equifax Reinvestigation"), Equifax re-reported the incomplete and inaccurate misleading information on Plaintiff's Credit File.  Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File.

57. Equifax and Ocwen, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

58. Due to Equifax and Ocwen's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. §§ 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

59. Additionally, on May 24, 2017, Plaintiff obtained his own full current Equifax Credit Report, No. 7144010307 ("Second Equifax Report").  The Second Equifax Report constituted a disclosure of the information in Plaintiff's File under 15 U.S.C. § 1681g.

> The Second Equifax Report continued to omit the reporting from May 2016 through March 2017, and in fact added an additional month of non-reporting on the tradeline in April 2017. Equifax's failure to report and/or rereport the Positive Suppressed Data on the Second Equifax Report constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.[3]

60. Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless resulting in this suit.

61. Equifax and Ocwen's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Equifax's errors and omissions were also willful given that this incomplete and inaccurate reporting continued despite Plaintiff providing Equifax with the RFI Response from Ocwen as part of Plaintiff's dispute letter specifically stating that Ocwen had reported Plaintiff as current from May 2016 to present. Plaintiff is, accordingly, eligible for statutory damages.

62. Also as a result of Equifax and Ocwen's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses in challenging Defendants' wrongful omissions, and emotional distress.

63. By reporting incomplete and inaccurate account information relating to Ocwen's Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures

---

[3] The fact that the confirmation number on the Second Equifax Report is higher than the Equifax Reinvestigation indicates that Equifax generated its reinvestigation prior to the time it generated the Second Equifax Report.

as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively, or comply with 15 U.S.C. § 1681g(a).

64. Plaintiff has been required to retain counsel to prosecute this action based on Equifax and Ocwen's defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

## THE TRANSUNION VIOLATIONS

*TransUnion and Ocwen Failed to Report Complete and Accurate Information about Ocwen Account No. \*\*\*\*4023*

65. Plaintiff obtained a consumer file from TransUnion dated May 25, 2016, identified by TransUnion File No. 364686500 (the "TU Credit File"). Therein, TransUnion failed to report positive payment reporting from Ocwen on Account No. 4023 from May 2016 through March 2017 (the "Positive Suppressed Data").

66. This failure caused Plaintiff's TU Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Ocwen.

67. Specifically, Ocwen furnished the Positive Suppressed Data to TransUnion stating that Plaintiff's account was current with all ongoing monthly payment obligations from May 2016 through March 2017. However, TransUnion failed to include any payments after September 2013.

68. Accordingly, on or about May 6, 2017, pursuant to 15 U.S.C. §1681i(a)(1), Plaintiff disputed TransUnion's incomplete and inaccurate reporting by notifying TransUnion, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's TU Credit File.

69. Specifically, Plaintiff sent a letter, certified, return receipt, to TransUnion (the "TransUnion Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

70. Plaintiff also included proof of the Positive Suppressed Data, which was provided directly by Ocwen to Plaintiff in the RFI Response.

71. Indeed, the RFI Response laid transparent the Positive Suppressed Data, which TransUnion failed to include in Plaintiff's TU Credit File.

72. On information and belief, upon receiving the TransUnion Dispute Letter, TransUnion timely notified Ocwen of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

73. Alternatively, TransUnion failed to notify Ocwen pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

74. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

75. On May 22, 2017, TransUnion sent Plaintiff the results of its reinvestigation, File No. 364686500-016 ("TransUnion Reinvestigation"). Therein, TransUnion took a "one size fits all approach" and rather than provide "complete" and "accurate" reporting of the Ocwen tradeline, simply deleted the account.[4]

76. A reasonable investigation and reinvestigation by TransUnion and Ocwen would have updated Ocwen's tradeline to include all of the Positive Suppressed Data.

77. TransUnion and Ocwen therefore failed to conduct a reasonable investigation and reinvestigation as required by 15 U.S.C. §§ 1681i(a) and 1681s-2(b), and wrongly

---

[4] Three days earlier, on May 19, 2017, TransUnion send a letter to Plaintiff, indicating that it lacked sufficient information to investigate her dispute.

continued suppressing complete and accurate information in connection with Plaintiff's TU Credit File.

78. TransUnion failed to review all relevant information provided by Plaintiff in the dispute to TransUnion, as required by and in violation of 15 U.S.C. §1681i(a).

79. Due to TransUnion and Ocwen's failure to reasonably investigate and reinvestigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

80. Plaintiff's efforts to correct TransUnion's incomplete and inaccurate reporting were fruitless resulting in this suit.

81. TransUnion and Ocwen's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. TransUnion's errors and omissions were also willful given that this incomplete and inaccurate reporting continued despite Plaintiff providing TransUnion with the RFI Response from Ocwen as part of Plaintiff's dispute letter specifically stating that Ocwen had reported Plaintiff as current from May 2016 through March 2017.  Plaintiff is, accordingly, eligible for statutory damages.

82. Also as a result of TransUnion and Ocwen's continued incomplete and inaccurate reporting of the Positive Suppressed Data, Plaintiff has also suffered actual damages, including but not limited to out-of-pocket expenses in challenging Defendants' wrongful omissions, and emotional distress.

83. By reporting incomplete and inaccurate account information relating to Ocwen's Account after notice and confirmation of its errors, TransUnion failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

84. Plaintiff has been required to retain counsel to prosecute this action based on TransUnion's defective reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

85. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. The foregoing acts and omissions related to Defendants constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

87. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

88. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

//
//
//
//
//
//
//
//
//

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 4, 2018

          Respectfully submitted,

          /s/ David H. Krieger, Esq.
          David H. Krieger, Esq.
          HAINES & KRIEGER, LLC
          8985 S. Eastern Ave., Suite 350
          Henderson, NV 89123

          Matthew I. Knepper, Esq.
          Miles N. Clark, Esq.
          KNEPPER & CLARK LLC
          10040 W. Cheyenne Ave., Suite 170-109
          Las Vegas, NV 89129
          Attorneys for Plaintiff